Judge Marshall
delivered the opinion of the Court.
Wm. E. Milton, having as agent of the “Columbus Fire and Marine Insui’ance Company,” incorporated by the State of Ohio, and without authority from this •> State, effected in the city of Lexington, Kentucky, va- . . A , . „ , , nous insurances against loss by fire and other casuaf-ties) an-d received therefor, a large sum as premiums of insurance, the present proceeding was instituted in the Fayette Circuit Court, for the purpose of having, upon a-case agreed between the representatives of the Commonwealth and of the city of Lexington, respectively, on the one side, and the said Milton on the other, a judicial determination as to the constitutional validity of the tax imposed by an act of 11th of March, 1843, upon insurance companies not incorporated by the State of Kentucky, and of the tax imposed by ordinance of the city of Lexington, under the authority of the Legislature.
The sixth section of the act of 1843, ([Session acts, 1842-3,page 88,) entitled, an act to ad'd to the resources of the Sinking Fund, enacts “ that no person or persons within this Commonwealth, shall act as agent or agents fpr any individual or association of individuals, not authorized by the laws of this Commonwealth, to effect insurances against losses by sea or on rivers, in the nature of marine insurances; or insurances on lives, or granting annuities, or against any other loss or peril, whether by rain, flood,, fire, or other casualty^ by land or water, upon all or any species of property6 although such individuals or associations may be incor *213 porated for that purpose by any other State, without a license first had and obtained for that purpose,” which the Clerks of the several County Courts are authorized to issue, on payment to them of the sum of one hundred dollars.
The statute ol 1844, (Session acts of ]843-4, page 24,) repeating the 6th section of the act of 1842-3, and the-ordinance of the cuy on the sub-ces1 °f insuran‘
*213 The 7th section of the same act enacts that any person or persons acting as agent or agents for any individuals or'association of individuals not authorized by the laws of this Commonwealth, to effect insurances against losses, risks, or perils, of whatsoever nature, &c.; although such individuals may be incorporated for that purpose by any other State, shall pay to the agent of the Auditor of Public Accounts, semi-annually, the sum of two dollars and fifty cents, upon every sum of one hundred dollars, upon the amount of all premiums received by such agent or agents, or any other person or persons for them, or which shall have been agreed to be paid for any insurances effected or agreed to be effected, or procured by him or them, as such agent or agents, against loss or injury sustained, &c. And the said agent or agents are required to furnish twice a year,"to the agent of the auditor, a complete list, under oath, of all such premiums, and also of all such insurances, and pay the said sum of two dollars and fifty cents in every hundred dollars. And any agent or agents who shall offend against the act shall forfeit and pay to the Commonwealth, the sum of $1000, to be recovered, &c., provided, that notwithstanding, such forfeiture and payment thereof, such agent or agents shall remain personally responsible for the payment of said premiums, &c. And the principals of such agents, their property, goods and chattels, shall be liable to the payment of all such judgments, fines and decrees, and may be proceeded against by action, bill, &c. &c.
By an act of February, 9th, 1844, (Sess. acts, 1843-4, page 24,) the sixth section of the act of 1843, above recited, was repealed; and the license required by the said sixth section was thus dispensed with, but without affecting the seventh section, and the tax or per centage *214 upon premiums as thereby imposed. But by an act of February, 1847, (Sess. acts, 1846-7, page 265,) the Mayor and Council of the city of Lexington, are authorized to require that all insurance companies, and agents of insurance companies doing business as such, within the limits of the city, shall take out license, also to prescribe, the terms and require the annual renewal of the license, and to demand and receive for each license, a sum not exceeding one hundred dollars. The statute then prohibits any insurance company or agent of an insurance company, whether chartered by the State of Kentucky or not, from making insurance, &c., without such annual license. And imposes a penalty of $300, for the benefit of the city and to be recovered in the Lexington City Court, upon any insurance company, or officer, or agent of one, who shall violate any of these provisions.
Under this act, the Mayor and Council of Lexington, passed an ordinance, the first section of which, requires the agent of every insurance company then or thereafter established in that city, to take out a license to insure, to be issued and signed by the Clerk, and countersigned by the Mayor of the city, and it recites that the Lexington Insurance Company had contributed towards the Fire department, in the years 1845-6, the sum of $240. The 2d section requires the agent of every insurance company upon obtaining license, to execute a bond, &c., in the penalty of $200, conditioned to render on oath, semi-annually to the Mayor, an accurate account of premiums received during the preceding six months, and to pay to the city 3-|- per cent, on the amount of said premiums. The 3d section imposes upon every agent of an insurance company within the city, (the Lexington Insurance Company excepted,) who shall proceed to insure any thing whatsoever, without taking out a license in conformity with the ordinance, a penalty of ten dollars, to be paid to the city, for every twenty-four hours neglect to take out the license. And the 4th section provides, that should the *215 aforesaid per centage on premiums amount to more than one hundred dollars within twelve months, no more than $100 shall be received by the city.
"Agreements in regard, to the cases.
Judgment of the Circuit Court in the ease, as respects the Colum bus Insurance Company.
It is stated in the agreed case, that all the members or corporators of the Columbus Fire and Marine Insurance Company, are non-residents of Kentucky, and that said company is not authorized to insure by any statute of Kentucky. It is also stated that the Lexington Insurance Company, in addition to the amount sta-ted in the ordinance, had continued voluntarily to subscribe to the Lexington Fire Companies, one hundred dollars for each year. And it was agreed that should the statutes and ordinance above recited, be deemed valid, judgment should be rendered in favor of the Commonwealth and of the city, for the amount of the tax and license without the penalty.
The Circuit Court decided that the act of 1843, and the ordinance of the city of Lexington above referred to, were both and each unconstitutional and void, as to “the Columbus Fire and Marine Insurance Company,” and the defendant Milton, its agent. And rendered a judgment for costs against the Commonwealth and the city, each of which prosecutes a writ of error.
The precise grounds or views on which this judgment was founded, do not appear in the record. But it is now contended, that the act of 1843, is in conflict with that clause of the Constitution of the United States, (lsi clause, 2d section, 4th articled) which declaims that “the citizeas of each State shall be entitled to all privileges and immunities of citizens in the several States,” and that it is also in violation of that equality and uniformity of taxation which is required by the Constitution of Kentucky. The ordinance is also alleged to be in violation of the Constitution of Kentucky, and of -the statute authorizing the city to require a license tax from insurance companies, inasmuch as it exempts from the requisition and from the tax on the license, the Lexington Insurance Company. We shall consider these objections in the order in which they are above stated.
*216 1st-. The repeal of the 6th section of the act of 1843, which was not adverted to in the argument, and was not recollected by the Court until after the section was copied in this opinion, does not change essentially either the character of the act or the questions arising under it. The power asserted in each of the sections, is that of regulating the business of insurance, by subjecting it when done by agents of individuals or associations not authorized by the laws of this State, to the burthen of taxation, either in the form of a tax for license to do the business, or in the form of a tax proportioned to the amount or value of the business done. Or, it is the power of taxing for revenue, the business of insurance within this State, unless done by individuals or associations in proper person, in their natural capacities, and upon their personal responsibility, or by individuals or associations authorized by law. The reference in the act to individuals or associations authorized by the laws of this State, was undoubtedly intended to denote corporations created by this State for the purpose of insuring or authorized to insure. Upon these corporations, though effecting insurances by their agents, as they must do if they effect them at all, no burthen or restriction is imposed by the act, any more than upon individuals or associations making insurances in their natural capacity and in person. The discrimination between such corporations and individuals or associations not incorporated or authorized by the laws of this State to effect insurances, consists in the restriction or burthen imposed upon the right or facility of the latter, and not upon the former, to make this contract through the instrumentality of agents.
Whether the Legislature of Kentucky has a right thus to discriminate between corporations created by it and the individual citizens of the State, is a question arising under the Constitution of Kentucky, and not under that of the United States, certainly not under that clause which secures to the citizens of each State, all immunities and privileges of citizens in the several *217 States. And as the act of 1843, makes no discrimination whatever, between the citizens of this, and those of other States, when acting in person in their natural capacities, but subjects all and each to the same bur-thens when effecting insurances through the instrumentality of agents, and as, moreover, neither this nor any other statute precludes the individual citizens of other States from becoming members of the exempted corporations, but they are as free to become so at their own option as the citizens of this State are, (and it is to be presumed that citizens of this State may become members of foreign corporations,) the exemption of the domestic corporations of this State is not a discrimination between the individual citizens of this ^ and of other States, but is only a discrimination between these domestic corporations and the individual citizens of all the States, and between domestic and foreign corporations without regard to the citizenship of their members. If, therefore, the word “ citizens,” in the clause of the Constitution which has been quoted, refers to citizens in their natural persons, there seems to be no plausible ground for alleging a violation of this clause by the act of 1843. But as the corporations of .other States can only act in this State by means of agents, and are therefore necessarily subject to the burthens imposed by this act for making contracts of insurance by agents, while domestic corporations authorized to insure, are not subjected to the burthen, though acting by agents, there is a substantial discrimination between domestic and other corporations, to the disadvantage of the latter. And it is said that as the business of insurance in- this State is done by corporations, and not by individuals, the tax upon individvals insuring by agents, or upon agents effecting insurances for individuals or associations, is but a device to cover the real object of imposing a tax upon foreign corporations for doing within the State the business of insurance, which domestic corporations may-do without being taxed, and .that in making this discrimination, the act of 1843, denies to citizens of other *218 Slates some of the privileges or immunities of citizens of this State, which the Federal Constitution intended-to secure.
Citizens of other States exercising corporate privileges granted by such state, may be taxed in Kentucky.
If this assumption with regard to the real object of the act of 1843, were conceded, which we are not prepared to do, still in order to sustain the conclusion contended for, it must be shown either that a corporation as a mere legal existence distinct from the individuals composing it, is a citizen of the State which creates it entitled to the benefit of this clause of the constitution, and to the privileges and immunities of citizens in every State; or that in denying to the corporations of other States the right of doing within this State in their corporate capacity, what similar corporations of this State are allowed to do, or imposing, upon such right, if allowed, a burthen or tax not imposed upon domestic corporations, some, privilege or immunity of the citizens of other States, and which they have under this clause of the constitution, a right to enjoy on equal terms with the citizens of this State, is withheld from-them or improperly burthened.
In reflecting upon the important principles involved in these propositions, a comprehensive answer to each of them suggests itself in the consideration, that it was not intended by this clause of the Federal Constitution, to give to the laws of any one State, the slightest force in another State. The clause secures to the ci-tizens of each State in every other State, not the laws or the peculiar privileges which they may be entitled to in then-own State, but such protection and benefit of the laws of any and every other State, as- are common to the citizens thereof, in virtue of their being citizens. And as the-citizen of one State does not by virtue of this •clause carry with him into any other State, or become entitled to exercise there any peculiar privileges which he may have enjoyed at home, as being allowed-or conferred by the laws of his own State, neither does he acquire by force of this clause, any peculiar' privileges in another State, except upon the condition on which they *219 may be held or enjoyed by the citizens of such other State. But the corporation itself and its faculties or privileges as such, and the right of individuals to be or compose a corporation and to act in a corporate capacity, are all peculiar privileges, creations of the local law, and cannot by the mere force of that law, existor be exercised beyond its'territorial jurisdiction, it must therefore require the permission express or implied, of the sovereign in whose territory the'corporation attempts •to operate, unless the right be secured by the superior power of the Constitution.
The rights secured by the Constitution of the U. S , to citizens of the several States, reíales to those lundamen-tal rights which belongs to the citizens of all free governments under their own eonsti tutions.
The Constitution certainly intended to secure to every citizen of every State the right of traversing at will the territory of any and every other State, subject only to the laws applicable to its own citizens, of exercising there, freely but innocently, all of his faculties, of acquiring, holding, and alienating property as citizens might do, and of enjoying all other privileges and immunities common to the citizens of any State in which he might be present, or in whieh without being present he might transact business. But in securing these rights it does not exempt him from any condition which the law of the State imposes upon its own citizens, nor confer upon him any privilege which the law gives to particular persons for special purposes or upon prescribed conditions, nor secure to him the same privileges to which by the laws of his own State he may have been entitled.
In Corfield vs Coryell, (4 Wash. Cir. Court Rep’ts., 380,) Judge Washington characterizes the privileges and immunities secured by this clause as being such as are, “in their nature, fundamental, which belong of right, to the citizens of all free governments and which have at all times been enjoyed by the several States which compose this union, from the time of their becoming free, independent, and sovereign.” We suppose the same idea is conveyed when we say that they are such privileges and immunities, as are common to the citizens of any State under its constitution and constitutional laws. But neither in this comprehensive description of the *220 privileges and immunities guarantied by this clause of the constitution, nor in the enumeration which follows, is there any reference to corporations or corporate rights, or to any peculiar privileges, or to the right of a corporation to make contracts, or acquire property, oí-do any corporate act beyond the limits of the State, which creates it. And as these cannot be regarded as fundamental or common rights or privileges, they seem to be wholly excluded, except so far as the rights of citizens may be involved in the acquired rights of corporations of which they may be members.
If any State, supposing it to be within its own option, should allow a corporation of another State to transact business as a corporation within its limits and to acquire property there, the rights and property thus legally acquired, being held by the corporation for the corpora-tors, may be entitled to the same protection under this clause of the constitution, as if held by the corporators themselves. And as the value of the corporate rights legally acquired either in the State to which the corporation belongs, or in any other, may depend upon the right of suing, to be exercised according to the established forms of proceeding in the corporate name, it may be that the right of suing in the corporate name, which among independent nations would be matter of comity, may, by liberal interpretation be regarded as one of the privileges and immunities of citizens, to which the corporators citizens of any of the States, are entitled in every State. But if this be so, it is not as we think, because a corporation must be, or may be regarded as itself, in view of this clause of the Constitution a citizen of the State which creates it, and is entitled therefore, to all privileges and immunities of citizens in every State; but because the corporators themselves, being citizens, and the privilege of asserting their rights in the Courts being fundamental, they do not lose the benefit of the guarantee, because in point of form the suit for their benefit must be in the coporate name. The legality of the act done and of the right claimed by *221 the corporation being established, a remedy for its assertion is due to justice, and is allowed as we suppose by all civilized nations. If among these States tiie right to it is made absolute by the constitution, the mere form of the remedy is of little consequence. And if the sovereignty of the States is somewhat impaired by depriving them of the right of refusing the remedy to corporations intrusted with the interests of citizens, this is done for the advancement of justice, the establishment of which is one of the declared objects of the constitution. And in the perfect reciprocity secured by the guarantee to the citizens of every State, in its tendency to establish justice, to ensure domestic tranquility, to promote the general welfare, and to form and preserve a perfect union of the States, and the people intended to be united in one government, thé slight restriction thus imposed upon the exercise of sovereignty by the States, is fully compensated.
But the most absolute recognition or guarantee to the citizens of each State of all privileges and immunities of citizens in the several States, if limited as its terms import, to individual citizens as natural persons, and if restricted, as all must allow it to be, to such privileges and immunities as are fundamental, and therefore presumably common to the citizens of every State in their natural capacities, implies no concession by or in one State, to the laws of any other State, and imparts no extra territorial vigor to the laws of any State. It is rather a concession to the natural faculties and rights of individuals to the law of nature from which they are derived, and to the principles of benevolence and equality, the prevalence of which marks the advance of civilization and refinement. It is a concession too, which, while in point of congruity, it is due to all individuals who are citizens of the same government, is in no respect inconsistent with the character and objects of the instrumentby which that government is created, or with the principles on which the government and the union are based.
*222 If, however, the clause is to be construed as guaranteeing to the citizens of each State, not merely the privileges and immunities common to the citizens of any other State in which they may claim to act as citizens, but such privileges and immunities as the laws of their own State allow or confer upon them, it would at once be perceived that its character of ben'ificence and conservative liability is changed by the introduction of a principle, which so far as the rights of individuals are concerned, gives full effect in each State to the laws of any and every other State, and thus secures to each State the power of extra territorial legislation in and over the other States, to the extent that power can be made operative by conferring rights or privileges upon its own citizens, to be exercised by them in other States. But objectionable as such a power.would be if confined to conferring rights upon individual citizens, it is fraught with still greater evil if under the idea that a corporation is itself a citizen, it may exercise in every other State such rights and privileges as are conferred upon it by the State of its locality, and which it may there exercise. As corporations concentrating capital and skill are more powerful than the individuals who compose them, and as corporations may be used for almost every purpose connected with the business and interests of society, the absolute right of the corporations of one State to do in every other State, all corporate acts within the powers granted by its charter, is in effect an absolute and almost unlimited power in one or in each State to legislate extra territorially, by conferring rights within another State or by conferring upon instruments of its own creation the power of acquiring them there. The apparent reciprocity of the power wonld prove to be a delusion. The competition for extra territorial advantages would but aggrandize the stronger, to the disparagement of the weaker States. Resistance and retaliation would lead to conflict and confusion, and the weaker States must either submit to have their policy controlled, their business monopolized *223 and their domestic institutions reduced to insignificance, or the peace and harmony of the States would be broken up, and perhaps the Union itself destroyed.
It was not the purpose of the Federal Constitution to give to the States the right of malting laws or conferring privileges to c o r p o rations,which shall have-force without the States wherer made.
Without looking to any extreme consequences, we say that the grant of extra territorial power to the States, is wholly beyond the objects of the constitution and inconsistent with its character and provisions. For the general purposes of the constitution and the Union, certain powers of legislation and of sovereignty are transferred from the States to the Union, for the preservation of harmony, and for the protection and effectu-ation of individual rights,- the exercise of other powers not transferred is restricted or prohibited. For the same purposes, and to ensure and facilitate the attainment of justice, full faith and credit are secured to the public acts and records of each State, and full effect given by the authorized legislation of Congress to its judicial proceedings. In the same spirit, fugitives from justice and from labor, are to be restored. But we do not in these, or in any other provisions, find any grant or recognition of a power of extra territorial legislation in the States. And as we believe the exercise of such a power would be destructive of the ends of the constitution, and tend to the subversion of the Union, we cannot adopt any forced construction or subtle refinement for the purpose of deducing from the clause now in question, the existence of such a power. We believe the constitution grants no power to the States except through the general government i-n which they all participate. It was no part of its object to grant extraterritorial power. None existed in the States before the constitution, and none exists independently of it. We think none is granted by the clause now in question,, because it is not granted in terms, and can only be deduced if at all, by artificial construction, and because if established by such construction it would be inconsistent with the character and destructive of the objects of the instrument,
*224 The proposition contended for does not however, go to the length of claiming an absolute right for the corporations of one State to exercise their corporate faculties in another State, but claims the right of exercising such functions or doing such business in another State, as the corporations of that State are allowed to do, and on the same terms. But this proposition is but a mitigated form of the other and contains the same principle, only more limited in its application. It allows a State to keep out foreign corporations upon condition that it shall create none for itself. But should the State consider it necessary for any of its own purposes, to create a domestic corporation framed and guarded for the accomplishment of its own objects and according to its own views of the public safety and advantage, it can only create this necessary instrument of its own, on the condition of losing the power of repelling or restraining the interference of foreign corporations, and on condition of' admitting similar instruments of other governments to operate freely within its own territory, in the same manner and to the same extent as is allowed to'its own. If such were the written words of the constitution, it might be said that a State by the act of creating a corporation, consents that similar corporations created by other States should come freely into competition with it, since it knows that such would be the legal and necessary consequence. But the act in its own nature implies no such consent, but rather the contrary, since it is an act by which the State attempts to regulate its own affairs and to subserve its own interests by its own laws. And if the constitution compels it, as the consequence of such an act, to submit to the interference of foreign corporations framed and controlled by foreign laws, it so far subjects it to the legislation of other States, and gives to each State a power within every other State which shall attempt to advance its own internal prosperity by means of domestic corporations. Even under the limitation stated, the proposition amounts to this, that whatever one State may *225 authorize its corporations to do within its own limits, other States may authorize their corporations to do within the same limits, or what is the same thing, their corporations deriving 'their existence and powers solely from -them, may do without and against the ’will of the State within which they choose to operate. There is no grant or guarantee of any similar right or power in ■the constitution. No such concession is implied in the guarantee to individual citizens of each State, of all fundamental or common -privileges and immunities of citizens in t-he several States; because the corporate existence and functions are themselves peculiar privileges not fundamental or common to the citizens of any State, but only to be acquired on the conditions prescribed in the charter of incorporation, not belonging to a citizen of the same State merely because he is a citizen, and therefore not belonging to the citizen of another Sta-te either on the ground that he is such citizen, or that he has become a member of a corporation of the other State by complying there, with the conditions of membership. It is not, therefore, through the privileges and immunities guaranteed to individual citizens, that the foreign corporations of which they are members can acquire all the privileges and immunities of domestic corporations. For although the citizenship of the individual corporators may under this clause, protect the rights of property and contract lawfully acquired by the corporation for them, it does not confer the right of acquisition in the corporate character, because that is not a right pertaining to the corporators merely as citizens, and because if it did pertain to them as citizens of their own State, it would still be a peculiar privilege derived from their own State, not belonging of course to citizens of another State, and therefore not guaranteed to the foreign corporators.
It is then only by assuming that in view of this clause of the constitution, corporations are citizens of the .States which create them, that they can be brought within the guarantee, so as to entitle the corporations *226 of each Slate, to all privileges and immunities of corporations in the several States. But in view of the character and objects of the constitution, the phrase “all privileges and immunities of citizens,” even when applied to natural persons, is restrained so as to embrace such privileges and immunities only as are fundamental and common to freemen in the several States, And if this restriction does not absolutely exclude corporations from the benefit of the clause except as to rights of property and contract lawfully acquired, the question would still remain, whether all the privileges and immunities of these artificial beings are to be considered as fundamental and therefore within the guarantee, and if not all, which of them are to be so considered. This enquiry would open a new field for construction or conjecture. And the fact that it has never been explored, and that no Court so far as we know, has ever yet decided that corporations are to be regarded as citizens under this clause of the constitution, and as such, entitled to its protection, is an additional reason to those already suggested, for not extending the operation of the clause by a strained and unnatural interpretation of the word ‘ citizen,’ so as to include corporations, and thereby not only to introduce a new subject of construction and doubt, but a new element of discord and confusion, incongruous with the general spirit and character of the constitution and Union, and tending to the subversion of both.
Corporations created by one State, have no right to exercise its o o r p or at e power and privileges within the limits of other States without consent given.
We call the construction contended for, a new element, beeause heretofore in this Court, and as we believe in other Courts of the Union, the right of the corporations of one State to exercise their corporate powers within another State, so as to acquire rights there, has been regarded as a mere matter of comity, dependent upon the will of the State in which the exercise of such right is attempted, and subject to be interdicted by it, though in this family of States its consent might be presumed: Lathrop vs Com. Bank of Scioto, (8th Dana, 112.) Atterbury vs Knox and McKee, (4 B. *227 Monroe, 90,) &c. In the case of the Bank of the U. S. vs Devoux, (5th Cranch, 84,) the Supreme Court of the U. S., repudiated the idea that corporations could be considered as citizens, even so far as on that ground to determine their character as parties to a suit under the clause of the constitution giving to the Federal Courts jurisdiction between citizens of different States, and under the judiciary act of Congress defining the exercise of this jurisdiction; and the doctrine of that case was for many years followed in that and the other Federal Courts. And although in the later case of the Louisville R. R. Company vs Letson, (2 Howard's Rep., 497,) this doctrine has been overruled, and the Supreme Court decided that a corporation “is substantially, within the meaning of the law, a citizen of the State which created it, and where its business is done, for all the purposes of suing and being suedwe do not regard this decision upon a question of jurisdiction, aá fixing upon corporations the character of citizens, except for the assertion of rights lawfully acquired and existing, nor indeed as going farther than to decide that they may be regarded as citizens, for the purpose of suing and being sued in the Federal Courts as citizens of the State of their locality, although some of the corpo-rators might be citizens of other States.
There are, it is true, some expressions in the opinion, which indicate that corporations may be regarded as citizens to all intents and purposes. But in saying this, the Court went far beyond the question .before them,, and to which it must be assumed, that their attention was particularly directed. They make no reference to the clause of the constitution now under consideration. There is no reason to suppose that they deliberated upon it, or looked to the effect of its application to corporations regarded as citizens. They certainly did not undertake to construe this clause. And their decision that corporations are substantially citizens for all the purposes of suing and being sued, does not decide that they are citizens for all or any other purposes, or that *228 they are to be mo regarded under this danse of the constitution, or that, they are. entitled absolutely to exercise within any State but their own, all rights, or to enjoy all privileges and immunities of domestic corporations. Such a right cannot be conceded upon the authority of the case referred to. The privilege of suing, and the form of suing, and the question in what tribunal the jurisdiction as dependant upon the form of the suit, is to be entertained, do not reach the question of the privilege of acquiring the rights which, are to be asserted in the suit. The exercise of this privilege, we think each State has the right to permit or refuse to the corporations of other States, and therefore to place under such burthens or restrictions as in its own discretion, it may deem-suitable. So far as the privilege is freely permitted, the rights acquired under it are entitled to the same protection, or the same privileges and immunities, as other similar rights of individual citizens. But if it is permitted under condition, or subject to a burthen or tax,, the rights acquired under such permission are subject to this burthen, though in-other respects to be freely asserted or enjoyed.
The states hare the power and right to impose upon corpora* tions chartered by other States, a tax for the pii* rilegc of transacting the business in such Slate, though no such burthen be imposed upon like corporation chartered by its own Legisia- , ture.
It follows that in our opinion, the act of 1843, if it be regarded merely as an act imposing a tax upon foreign corporations, to which domestic corporations are not subjected, and as a burthen upon the/ privilege of exercising their corporate functions in this State, would not be inconsistent with this clause of the constitution of the United States, even if there be no equivalent burthen imposed upon domestic corporations in- some other shape, as by the requisition of a bonus for their charter, or by the imposition of special duties to be performed for the public benefit. The enquiry, whether there is such equivalent burthen in a particular case is immaterial. The State having the undoubted right to impose conditions upon the acquisition and exercise of corporate rights created by its own laws, must have a similar right with respect to foreign corporations, and as it can discriminate between its own corporations in prescribing the terms of their creation, so can it dis *229 criminate between its own and foreign corporations in prescribing the terms on which the latter may be permitted to exercise their corporate faculty, and acquire rights within its territory. And even if by its own constitution it could not in the imposition of taxes, discriminate between its own corporations and its own citizens, to the’disadvantage of the latter, and whether it could or not, any restriction in this respect could not operate in favor of foreign corporations against whom it may discriminate, in favor either of its own corporations or citizens. Individual citizens of other States cannot complain of such discrimination,’ because, as such, they have no right to exercise their corporate functions here, but by permission, and because the discrimination supposed, leaves to them the samé privileges and immunities which remain with the citizens of this State. But the entire discrimination-made by the act of 1843, in favor of incorporated insurance companies and against individual citizens, is in allowing the former to ensure freely through the instrumentality of agents, which the latter can only do under the burthen of a tax. The tax is undoubtedly intended as a restraint upon the mode of making insurance, as well as a tax upon insurances made in a different mode. The right of the Legislature to create a corporation for the purpose of making insurances throughout the country, and by means of its agents, cannot be questioned. And as such a corporation is created, presumably, for the benefit of the community, with such capital as the Legislature may deem sufficient, and under such regulations as to its modes of business and its liability, as the public safety and interests may require; there may be in the very nature of the institution, and in the objects for which it was created and which it accomplishes, a sufficient consideration for such peculiar privileges as the Legislature may, in view of the services required, think proper to confer upon it. And as there may also be very sufficient reasons connected with the safety and interests of the community., for restraining the right of *230 individuals to make insurance through agents whereby they might extend their contracts indefinitely, to the great detriment of the community. We cannot say that there is any usurpation or flagrant abuse of power in subjecting to taxation, and thus restraining insurances by individuals through the instrumentality of agents, and in exempting domestic insurance companies from the tax, when acting as they must do, to accomplish the purposes of their creation through a similar instrumentality.
The city of Lexington under the authority of the act of the Legislature has the const itutional power to tax a foreign I n su-rance Company operating in the city.
In every view then, we think the act of 1843, is constitutional, and that the State was entitled to judgment against Milton for the tax imposed by that act, amounting to two and a half per cent., upon the premiums on the insurances effected by him, as agent of the “Columbus Pire and Marine Insurance Company.”
Upon the case of the city of Lexington little remains to be said. The act conferring authority upon the city to tax Insurance Companies operating within its limits makes no discrimination between foreign and domestic companies, And there seems to be no objection to that act. But it is objected that the ordinance imposing the tax, exempts the Lexington Insurance Company, while it imposes a tax upon all agents or agencies of Insurance Companies effecting insurance within the city. If this be so, still the ordinance shows by its recital a sufficient consideration for exempting the Lexington Insurance Company from the license tax at the date of the ordinance, and the agreed case shows that this consideration had been continued from year to year by an annual contribution to the purposes of the city, equal to-the highest sum which the city was authorized to require for license, This may be deemed a substantial compliance with the law so long as the city might choose to consider it as an equivalent to the license tax. And if it should not be so considered the proper consequence would seem to be, not that the tax as far as it was authorized should be deemed illegal and void, but that the Lexington Insurance Company might be sub *231 jected either to the tax or to the penalty for making Insurances in the city of Lexington without a. license.
J. Harlan, Atto. Gen., for the Commonwealth ; Robinson and Johnson for the City of Lexington; Robertson and H. C. PindelHov Milton.
In either view, we think the imposition of the license tax was valid as against the agencies of other Companies established and doing business in Lexington, and that the city was entitled to recover it against Milton as the agent of the Columbus Fire and Marine Insurance Company.
Wherefore the judgment against the State and the city is reversed and the causes are remanded with directions to render judgment according to the terms of the agreed case in favor of the State and in favor of the city for the sums due to them respectively, and for their respective costs.